# ROANOKE BRICK & LIME CO.

*v.*

## SIMMONS *et al.*

(*Supreme Court of Appeals of Virginia, Feb, 7, 1895.*)

[20 S. E. Rep. 955.]

**Deeds of Trust—Bona Fide Purchasers—Constructive Notice—Case at Bar.***

A grantee assumed payment of 92 notes, for $35 each, to the R. B. & L. Co., and in the deed the grantor covenanted "that he had done no act to incumber said land, except the deed of trust above mentioned." No deed of trust was mentioned above, nor was there any on record: *held,* that said recitation put all claiming through the grantee upon inquiry to said company concerning said deed.

**Same—Same—Same.**

Where a beneficiary in a deed of trust not on record remembers that there was such deed, but cannot find it, it is insufficient as constructive notice to one put on inquiry as to such deed.

**Vendor's Liens—Effect of Statute upon.**

All vendor's liens for the purchase money of property, unless expressly reserved on the face of the instrument, are abolished by Code 1849, c. 119, § 1.

Appeal from circuit court of City of Roanoke; J. A. Dupuy, Judge.

Suit by James S. Simmons, trustee, and others, to establish the lien of an unrecorded deed of trust securing the Roanoke Brick & Lime Company certain notes. From a decree against it, it appealed. Affirmed.

---

*See monographic note on "Deeds of Trust," Va. Rep. Anno.; also, foot-note to Burwell *v.* Fauber, 21 Gratt. 446 (Va. Rep. Anno.), where the principal case is cited.

*C. B. Moomaw,* for appellant.

*T. W. Miller, Scott & Staples,* and *T. D. Ranson,* for
appellees.

KEITH, P., delivered the opinion of the court.

The Roanoke Brick & Lime Company, by deed dated April
21, 1890, sold to W. A. Meeks certain real estate in the city of
Roanoke for $4,000, $500 of which was paid in cash ; and for
the balance Meeks executed 100 negotiable notes, in the sum
of $35 each, payable in monthly installments, the first of them
falling due on the 21st day of the ensuing May.   Meeks paid
eight of these notes, and by deed dated December 30, 1890,
he sold the same property to James N. Ranson, Jr., for the
sum of $7,500, $2,500 of which was paid in cash ; and, for the
residue, Ranson assumed the payment of the 92 $35 notes,
executed by Meeks to the Roanoke Brick & Lime Company,
remaining unpaid at the date of the deed, and executed for
the residue of the purchase money two notes of $890 each,
payable in one and two years from date.   The first deed re-
ferred to, from the Roanoke Brick & Lime Company to
Meeks, is a conveyance with general warranty, and with all
the usual covenants as to quiet enjoyment, for further assur-
ances, etc.   In the second deed, Meeks covenants that he has a
right to convey the said land to grantee ; that he has done
no act to incumber said land, except the deed of trust above
mentioned ; that the grantee shall have quiet enjoyment of said
land ; that it is free from incumbrance ; and that the party of
the first part shall execute such further assurances as may be
requisite.   By deed of even date with that last referred to,
James M. Ranson conveyed his property to James S. Sim-
mons, as trustee, to secure the payment of the two notes
above referred to, of $890 each, which he describes as the un-
paid purchase money on the property conveyed.   The two
notes thus secured were negotiated before maturity, and are

held, one by the Fidelity Loan & Trust Company, and the other by Thomas D. Ranson, executor of James M. Ranson, Sr., deceased. Upon default being made in the premium of the last two notes secured in the deed of trust of December 30, 1890, James S. Simmons, the trustee therein named, was called upon by the Fidelity Loan & Trust Company to make sale of the trust property, and it was accordingly advertised for sale on May 10, 1893. In this advertisement the trustee declares that he would sell subject to a prior deed of trust executed by W. A. Meeks to secure the Roanoke Brick & Lime Company the payment of $3,500 in monthly installments of $35 each, as evidenced by the negotiable notes of said Meeks, dated April 21, 1890, and payable to the Roanoke Brick & Lime Company, with interest. As soon as this advertisement was brought to the attention of the Fidelity Loan & Trust Company, it remonstrated with Simmons for subordinating its lien to a lien in favor of the Roanoke Brick & Lime Company, and declaring that there was no such deed of trust upon record ; that it had taken these notes without any notice of such preferred lien, and was therefore not affected by it ; and that, in point of fact, it had no existence. Yielding to these remonstrances, Simmons withdrew the first advertisement, and again advertised the property to be sold on the 22d of May, 1893. And thereupon the Roanoke Brick & Lime Company filed its bill, in which it is charged that the 100 $35 notes mentioned in its deed to W. A. Meeks dated April 21, 1890, were secured by deed of trust of even date therewith, which for some reason had not been recorded, and had been subsequently lost. It avers that James M. Ranson, Jr., was fully aware of the existence of the deed of trust executed by Meeks when he bought the property, and took the property subject to the lien of said deed. An injunction was awarded upon this bill, prohibiting Simmons, trustee, from selling the land in the proceedings mentioned. To this bill the Fidelity Loan & Trust Company, Simmons, and James M. Ranson and others were made

parties defendant.   It is taken for confessed as against Meeks.
The Fidelity Loan & Trust Company answered, claiming that
it acquired the note due two years from date, secured by the
deed from Ranson to Simmons, trustee, before its maturity,
for value, and without notice of the existence of a prior deed
of trust.   Thomas D. Ranson, the holder of the first of the two
notes secured by the deed to Simmons, also answers, and denies,
not only all knowledge of any prior lien in favor of the brick and
lime company, but denies that any such deed as the one alleged
to have been lost was ever executed.   He claims also to be a
holder of the note for value, and without notice of any ante-
cedent equity.   Simmons, the trustee, also answers the bill,
and denies any knowledge of the execution of the deed of trust
which the plaintiff, by his bill, seeks to establish, either actual
or constructive.   He says that he does not know whether
James M. Ranson, his grantor, had notice or not.   He admits
that he had an impression, based not upon knowledge, but
upon hearsay, that there was a lien upon the land by reason of
the deed of trust referred to, but was satisfied, after investi-
gation, that this impression was erroneous, and therefore with-
drew the first advertisement, and inserted another, in which no
reference to the alleged deed of trust executed by Meeks to
secure the complainant was made.   Issues having been thus
made by the pleadings, the plaintiff took the depositions of W.
B. Moomaw, its secretary and treasurer, and J. W. Neal, a
member of the firm of real-estate agents by whom the sale from
the brick and lime company to Meeks was negotiated.   In the
view which we have taken of the case, the other depositions
and proofs introduced on the part of the defendant need not
be specially adverted to.   The circuit court entered a decree
dismissing the bill, and to that decree an appeal was allowed
by one of the judges of this court.

It may be conceded that there is enough on the face of the
deed from Meeks to Ranson, dated December 30, 1890, to put
Ranson, and all who claim under him, upon inquiry as to the

existence of the deed of trust upon the property therein conveyed, antecedent to the deed under consideration, for it expressly appears that Meeks refuses to covenant that he has "done no act to incumber said land," but declares, on the contrary, that he has "done no act to incumber the said land, except the deed of trust above mentioned." There is no deed of trust above mentioned in the deed, but it does appear that the grantee, James M. Ranson, Jr., covenants to pay the 92 notes of $35 each to the Roanoke Brick & Lime Company. Any one, therefore, reading this deed with ordinary care, would probably—indeed, naturally, if not necessarily—conclude that the reference to the deed of trust had relation to the 92 notes of $35 each; and going one step further back in the chain of title, and reading the deed of the 21st of April, 1890, along with that of the 30th of December, one could hardly escape the conclusion that the Roanoke Brick & Lime Company was the beneficiary of the trust, if one existed. I feel little hesitation in saying that the recital as to the purchase money in the deed of December 30, 1890, taken in connection with the refusal of the grantor in that deed to warrant against incumbrances generally, was at least sufficient to put any man exercising reasonable caution upon inquiry, and sufficient also to direct and point that inquiry to the Roanoke Brick & Lime Company as the person likely to be interested. If there was enough on the face of the deed to put them upon inquiry, and that inquiry, if prosecuted, would have informed them as to the rights of the brick and lime company, they will be charged in a court of equity with the knowledge of every fact of which they would have become possessed had the inquiry which it was their duty to make been prosecuted. As was said by Judge Moncure in Burwell's Adm'r v. Fauber, 21 Grat. 446 : "Bona fide purchasers, for value and without notice, are favorites of a court of equity, and that court will not disarm such a purchaser of a legal advantage ; but purchasers are bound to use a due degree of caution in making their purchases, or they will not

be entitled to protection. The purchaser is bound not only by actual, but also by constructive, notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to information, and then say he is a bona fide purchaser without notice." As was said by Justice McLean in the case of Brush v. Ware, 15 Pet. 114 : "No principle is better established than that a purchaser must look to every part of the title which is essential to its validity. The law requires reasonable diligence in a purchaser to ascertain any defect of title, but, when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. He is a voluntary purchaser, and, having notice of the fact which casts doubt upon the validity of his title, are the rights of innocent parties to be prejudiced through his negligence? Authorities might be multiplied practically without limit. I will content myself, however, by referring only to Long v. Weller, 29 Grat. 347, and Pom. Eq. Jur. §§ 595–597, inclusive.

Assuming, therefore, that there was enough in this deed to put a reasonably prudent man upon inquiry, and that it pointed to the Roanoke Brick & Lime Company as the source of information, and that those whose duty it was to make the investigation are to be charged with knowledge of all defects, which could have been thus acquired, how stands the case? It is not to be presumed that the information thus obtained would have been other than that which the brick and lime company has been able to place in this record as the result of its efforts to establish its case against these defendants. The utmost, therefore, that could have been learned of the pretensions of the plaintiff, are the facts as stated by the witnesses adduced by the plaintiff to testify in its behalf.

It has been said that the inquiry should have been addressed

to the brick and lime company. It would have been more accurate to say to the officers of the brick and lime company. To which of the officers did the law make it the duty of the defendants to apply for information ? If to the president, then there is nothing in this record which shows that the president had any knowledge on the subject. He is not examined as a witness, as he probably would have been if he had had any personal knowledge of the existence of this deed. Inquiry, then, of the president, we have a right to assume, would have been fruitless ; and, if that inquiry would have been a discharge of the duty imposed upon the defendants, they must stand acquitted of all blame in failing to make it, for the law requires no man to do a vain thing. But grant that, failing to get satisfactory information from the president, the duty then devolved upon the defendants to inquire of the secretary and treasurer, and what would have been the result ? The secretary would have answered—we must now hold that he could only have answered—in the language of his deposition. The third question propounded to W. P. Moomaw, secretary and treasurer of the plaintiff's company, is as follows : " Q. I notice by the bill and exhibits in case of Roanoke Brick & Lime Company v. James S. Simmons that the Roanoke Brick & Lime Company sold to W. A. Meeks a piece of property described in said bill as lying in the city of Roanoke, on the north side of Campbell St., for the sum of $4,000, $500 of which was paid in cash, and the balance was evidenced by one hundred interest-bearing notes, payable in the sum of $35 each, monthly. State whether or not Meeks executed a deed of trust to secure these notes. If so, was the same placed on record? A. There certainly was a deed of trust prepared, but it appears that it is not on record, and cannot be found ; and, when my attention was called to the matter of the deed of trust, I was so sure that it could be produced that I went immediately to look for it among my papers. But I know that I have seen the deed of trust somewhere. Am satis-

fied that I had it in my possession at one time." Now, that
answer is the plaintiff's case. The rest of the deposition adds
not one jot or title to its force, nor does the deposition of J. W.
Neal, real-estate agent. On the contrary, the effect of the
further direct examination and of the cross-examination
is to diminish, rather than strengthen, the proof of the
execution of the deed, in so far as this answer tends
to establish it; for, conceding to witnesses entire veracity
of purpose, and without meaning to attribute to them the slight-
est intentional misstatement of the facts, the impression can-
not be resisted that these gentlemen are speaking rather as to
their impressions of their usual course of business in like cases
than from any very distinct recollection of the facts in this
particular case. It was very remarkable that such a paper
should have been lost. It appears that the 100 $35 notes were
taken to the vault of the National Exchange Bank. The deed
of trust, Mr. Moomaw says, was delivered to him at the same
time ; and yet the utmost care was observed with reference to
the preservation of each of the 100 notes, and the utmost neg-
ligence with reference to the preservation of that paper which
imparted to them their chief value. It creates the suspicion in
one's mind that the parties here were at the time resting content
with the personal security that they had for the payment of
these notes. It is part of the general history of those times,
of which the courts may take judicial notice, that there was the
utmost activity in the real-estate market ; that prices were
advancing from day to day ; houses and lots were speculated
in as freely as stocks and shares. The very property in ques-
tion here advanced from $4,000 in April to $7,500 in December,
and it was not unreasonable that entire confidence should have
been felt in the solvency of persons who were dealing in prop-
erty so rapidly enhancing in value. This plaintiff executed its
deed to Meeks on the 21st of April. It did not acknowledge
it until the 7th of the ensuing January, though the witnesses
say that the $35 notes were delivered immediately upon the

consummation of the transaction.   This seems hardly in con-
formity with the usual course of business, and lends additional
color to the idea that the parties were dealing with each other
not upon a very strict business footing.   We find, too, that
the deed of December 30, 1890, from Ranson, Jr., to Sim-
mons, trustee, though acknowleged on the 31st of January,
1891, was not admitted to record until the 19th of February,
1892,—another striking evidence of the laxity with which affairs
were conducted by the parties to these transactions.   Upon
consideration, therefore, of all the evidence, it leaves the
mind in great doubt and perplexity as to whether or not any
such deed of trust as that claimed by the plaintiff ever had any
existence.   But this is not all.   Taking the statement of the
secretary, Mr. Moomaw, in the terms in which it is made, is
it sufficient to establish a lien upon this property against a bona
fide purchaser for value, and without notice ?   It is true, he
says quite confidently that the deed of trust was executed ; but
he does not say what property was conveyed in that deed, and
that seems to be fatal to the plaintiff's proof.   It is possible
that the plaintiff's debt may have been secured by a deed of
trust upon other property owned by Meeks, and that would be
entirely consistent with the deposition of Moomaw, and of
Neal also.   The burden of proof is always upon the plaintiff to
establish its case, and where it comes into court seeking to set
up a lien by virtue of a lost instrument, thereby defeating a
lien appearing by the public records, it would seem that the
court should require that degree of proof that would enable the
court to proceed in its favor with reasonable confidence and
certainty.   That confidence I do not feel.   On the contrary,
the record leaves me, after a most careful investigation, un-
able to say that the plaintiff has sustained its case by satisfactory
evidence.

A lien is claimed by the plaintiff, in its bill, upon the
futher ground that "by the deed of December 30, 1890, James
M. Ranson, having assumed the payment of the $35 notes be-

came personally liable therefor, and that the assumption operated as a deed of trust or mortgage on the land, which a court of equity would enforce, not only against James M. Ranson himself, but against all subsequent purchasers dealing in any way with the land, with a knowledge of the existence of the lien"; and, of course, if the facts stated comstituted a lien all subsequent purchasers would be affected thereby, and will take the land with a notice of the lien, because it appears upon the face of the deed itself.   The plaintiff rests this pretension upon the decisions of this court in the case of Vanmeter v. Vanmeter, 3 Grat. 148; William and Mary College v. Powel, 12 Grat. 372; Hobson v. Whitlow, 80 Va. 784; 2 Minor, Inst. 236; and certain other cases in other states.   The facts in the first two cases, cited from 3 and 12 Grat., all arose prior to the Code of 1849, which cut up by the roots the lien of the vendor for unpaid purchase money.   Counsel for plaintiff made a very ingenious and plausible argument to show that those cases, and those of a like character, were not decided upon the doctrine in question.   A very casual reference to the cases will be sufficient, I think, to show that it was the vendor's lien, pure and simple, with which the court was dealing in Vanmeter v. Vanmeter, for it appears on page 162 that, in the opinion of the court, there was no expressed trust created by the deed there construed, and that bona fide purchasers of the property would have been under no obligation to see to the application of the purchase money and the payment of the debts; but, said the court, "such payment was a part of the consideration for the conveyance, and it is against equity and goods conscience that the grantees should be permitted to hold the property without making such payments.   A court of equity will therefore treat the subject as in the nature of a trust, and establish a lien on the property while in the hands of the grantees, as a means of compelling its performance."   The case of William and Mary College v. Powell seems to have

been on an expressed trust,—wholly different from the case under consideration. Nor is there anything, as far as I have been able to discover, in Mr. Minor's invaluable book, cited by the plaintiff, at all tending to sustain the lien which he asserts. Code 1849, c. 119, § 1, declares "that if any person hereafter should convey any real-estate and purchase money, or any part thereof remain unpaid at the time of the conveyance he shall not thereby have a lien for such unpaid purchase money unless such lien is expressly reserved on the face of the conveyance." This statute was intended to extirpate a great evil, and since its passage, as far as I know, no case has been decided in which the lien thereby abolished has been recognized, except in cases where the facts existed prior to its passage. I do not consider that there is anything in the case of Hobson v. Whitlow which is at all in conflict with the statute. In that case, as I understand the facts, no conveyance had been made of the real estate upon which the decree of the court operated. If, however, that case can be construed as authority for the enforcement of a vendor's lien existing, or claimed to exist, otherwise, then, in accordance with the terms of the statute just quoted, it cannot be law, and should not be followed ; but I repeat that as I understand the facts of that case, which are somewhat confused, and not easily understood, there is no conflict between the decision of this court in that case and the statute law. Upon the whole case, therefore, I am of opinion that the plaintiff has failed to establish a lien of any kind upon the property in question, and that the decree of the circuit court should be affirmed.